Matthew C. Piccolo, Esq.
Nevada Bar No. 14331
PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
Tel: (702) 630-5030
Fax: (702) 944-6630
matt@piccololawoffices.com

Sean A. Neahusan, Esq.
Nevada Bar No. 11224
SEAN NEAHUSAN, ATTORNEY AT LAW, L.L.C.
300 S. Arlington Ave, Suite B
Reno, NV 89501
Tel: (775) 432-1581
Fax: (775) 329-4553
sean@neahusanlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ERICA BARROW, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>HELICOPTER PARTS INTERNATIONAL, INC, a Nevada corporation; HARRY NIWRANSKI, an individual; ANTHONY MAGNOTTA; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive.<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## **COMPLAINT**

   Plaintiff Erica Barrow, by and through counsel, Matthew C. Piccolo, Esq., of Piccolo

Law Offices, and Sean A. Neahusan, Esq. of Sean Neahusan, Attorney at Law, L.L.C. complains

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

against Defendants Helicopter Parts International, Inc. ("HPI" or "the Company"), Harry Niwranski, and Anthony Magnotta, as follows:

### **PARTIES**

1.      Plaintiff Erica Barrow is, and was at all times relevant herein, an individual citizen and resident of the State of Nevada and at all times relevant was employed as a controller by Defendant HPI.

2.      Defendant HPI is a domestic corporation organized in Nevada, and existing under and by virtue of the laws of the State of Nevada, is authorized to do business in Nevada and do business as Helicopter Parts International, Inc, and it may be served with process upon its registered agent Harry Niwranski, 2150 Meridian Blvd. Minden, NV 89423.

3.      Defendant Harry Niwranski is a natural person who resides in the State of Nevada and at all times relevant was employed by and/or the owner of HPI.

4.      Defendant Anthony Magnotta is a natural person who resides in the State of Nevada.

5.      The true names and capacities, whether individual, corporate, associate, or otherwise of Defendant(s), DOES 1 through 10, inclusive, and ROE CORPORATIONS/ENTITIES 1 through 10, inclusive, are unknown to Plaintiff, who therefore, sues said Defendant(s) by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendant(s) herein referred to and caused damages proximately thereby as hereinafter alleged. Upon information and belief, and at all times relevant hereto, Defendants name and/or fictitiously named, and each of them, were the agents, ostensible agents, servants, employees, employers, alter-egos, partners, co-owners and/or joint ventures of each other and of

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5000

their co-defendants, and were acting within the color, purpose, and scope of their employment, agency, ownership, and/or joint ventures, and by reason of such relationships, the Defendants, and each of them, are jointly and severally responsible and liable for the acts or omissions of their Defendants, as alleged herein.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it involves a federal question as it arises under the Constitution, laws, or treaties of the United States.

7.      This controversy arises under the laws of the United States; namely, 29 U.S.C. § 201 *et seq.* (the Fair Labor Standards Act of 1938 ("FLSA")).

8.      This Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this District because the events giving rise to the claims occurred in the State of Nevada and Plaintiff and Defendants reside and/or operate in the State of Nevada.

## FACTUAL ALLEGATIONS

### Barrow's Employment and Overtime

10.     In June 2019, HPI hired Barrow to work as a controller, with duties involving accounting, human resources, and other aspects of the Company.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

11.    HPI was an employer engaged in commerce pursuant to the FLSA, 29 U.S.C. § 201 *et. seq.* and an "employer" of Barrow, as defined NRS 608.011.

12.    HPI supplies aviation parts and components to its customers throughout the United States.

13.    Barrow was a non-exempt hourly "employee" of HPI during the relevant time period alleged herein pursuant to NRS 608.005 *et. seq.* and the FLSA, 29 U.S.C. § 201 *et. seq.*

14.    Barrow's regular rate of pay as an employee of HPI was $24 per hour.

15.    At HPI's direction, Barrow regularly worked more than 40 hours during her scheduled work weeks.

16.    For many work weeks in which Barrow worked more than 40 hours, Niwranski refused to pay Barrow for those hours, and refused to pay her an overtime rate, except when he forced her to do homework for his child.

**Barrow Attempts to Comply with the Law but HPI Refuses to Do So**

17.    As part of Barrow's duties, she helped HPI stay compliant with laws and regulations. For instance, she regularly spoke with Niwranski about complying with laws and regulations regarding accounting, human resources, aviation, health and safety, and his sexual harassment and assault of female employees.

18.    On or about March 15, 2020, Governor Sisolak issued an order closing all schools until at least April 6, 2020 because of the coronavirus.

19.    On or about March 16, 2020, Douglas County issued an order stating that sick employees should stay home and that employees who are able to work from home should do so.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5000

20.   Barrow sent a copy of the Douglas County order to Niwranski and asked if she should take down an employment ad.

21.   Barrow also asked Niwranski if she should not have Kyra Whybrew, an employee under her supervision, come into work because she was sick.

22.   Barrow was especially concerned about the coronavirus pandemic because she has a history of asthma and other respiratory weakness, and she lived with her father who was 68 years of age.

23.   Barrow also told Niwranski she was able to work from home.

24.   On or about March 17, 2020, Governor Sisolak asked all non-essential businesses to close, and Barrow made Niwranski aware of the order.

25.   On or about March 18, 2020, Barrow told Niwranski that Whybrew had a sore throat, which can be a symptom of COVID-19, but he told Barrow to have Whybrew come to work anyway, even though Barrow and Niwranski were able to cover Whybrew's work while she would have been out sick.

26.   Niwranski also asked Barrow not to cancel the employment ad and asked her to come to work the next morning for his dog's birthday party.

27.   On or about March 19, 2020, Barrow was unable to come to work because she had no childcare available due to circumstances related to the coronavirus.

28.   The same day, she told Niwranski the city was enforcing the close of businesses by issuing citations and suspending or revoking business licenses. She told Niwranski they should work from home to avoid such repercussions.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5000

29.     On or about March 20, 2020, Governor Sisolak issued an order and directive that all non-essential businesses close.

30.     Barrow reviewed Sisolak's order along with other applicable orders and interpretive guidelines and believed that HPI was not an essential business, which she told Niwranski.

31.     Barrow also warned Niwranski that the sheriff's office could shut down the business if they were in violation of the orders.

32.     On or about March 22, 2020, Barrow told Niwranski she was still willing to work but would need to do most of her work from home.

33.     Niwranski refused to close HPI or allow Barrow to work from home or allow other employees to stay home.

34.     On March 25, 2020, Barrow and Niwranski were discussing the orders regarding the coronavirus and Niwranski said something to the effect of "F___ the government; I don't care what they say."

35.     Barrow was concerned that Niwranski refused to comply with the government orders and, more importantly, she was concerned about her health and the health of her co-workers.

36.     As a result, on or about March 25, 2020 Barrow contacted the Douglas County Sheriff's Office to report that HPI was not following government directives, and she asked for guidance on what to do.

37.     The Sheriff's Office went and spoke with Niwranski.

38.     In a meeting later, Niwranski spoke about the "stupid sheriff's department" showing up. When he said he wouldn't violate government directives, Barrow point out that the fact she was there at that meeting showed he would violate the directives.

39.     Toward the middle of March 2020, Niwranski hired Anthony Magnotta to "help put the company back in order and help with the business."

40.     Shortly after Magnotta was hired, he and Niwranski told Barrow they wanted her to be involved in an illegal tax scheme by setting up a new business in another state to get tax advantages for expenses related to the schooling of Niwranski's son.

41.     Barrow and an independent CPA who were present both told Magnotta and Niwranski their scheme was illegal, and Barrow refused to assist with the scheme.

42.     Barrow wrote to Niwranski, "I can't in good conscious let you do anything illegal."

43.     Barrow had also refused to engage in other illegal practices earlier and had discussed with Niwranski complaints by HPI female employees that Niwranski had sexually harassed them.

**HPI Fires Barrow for Reporting Its Non-Compliance to the Sheriff's Office**

44.     On or about March 26, 2020, Barrow told Niwranski she was going to work from home and reminded him that employees were supposed to work from home, if possible, but Niwranski said, "I need you to come in" and wanted her to meet with Magnotta.

45.     Barrow expressed hesitation about meeting with Magnotta because she was concerned about his character and his suggestions to engage in illegal practices; she asked Niwranski for assurance she wouldn't be terminated soon.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

46.     When Barrow arrived at HPI on or about March 26, 2020, Niwranski and Magnotta were going through her things in her office.

47.     Magnotta said to Barrow, "You're fired because you reported the company to the sheriff's department."

48.     When Barrow said she believed Magnotta had no authority to fire her, Niwranski said he had hired Magnotta, implying that Magnotta did have authority to fire her.

49.     Magnotta then told Niwranski to tell Barrow she was fired and Niwranski said to Barrow, "You're fired."

50.     While Barrow was packing her things, Niwranski said to Barrow something like, "Why did you call the sheriff's department? I was going to give you the raise you asked for."

51.     Magnotta overheard Niwranski and took him into the hallway and said something like, "You're not changing your mind now are you? Go in there and fire her!"

52.     Niwranski told Magnotta he was not changing his mind.

53.     On or about April 3, 2020, HPI sent Barrow a letter asking her to stop making reports "to the Douglas Sheriff's Office regarding alleged damages to stored vessels and conduct against recent Executive Orders."

54.     Since Barrow's termination, Niwranski has done everything in his power to prevent Barrow from earning a living and providing for her family.

**Niwranski Makes False Statements About Barrow**

55.     For example, Niwranski contacted H&R Block, a tax preparation company for whom Barrow also worked as an employee.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5000

56.     Niwranski told H&R Block that Barrow had filed an extension for HPI's taxes without permission and used a company credit card to pay for filing the extension without permission. He also said Barrow helped his son file a tax return without permission.

57.     Niwranski's statements to H&R Block were false because Barrow did have permission to file for the extension, use the credit card, and help his son file his taxes.

58.     Niwranski made these statements to H&R Block with the express purpose of harming Barrow's employment relationship with H&R Block.

59.     Because of Niwranski's false statement, H&R Block terminated Barrow's employment so she is no longer able to earn income by working for H&R Block.

60.     Barrow is also unable to benefit from the specialized training and certifications she obtained through H&R Block.

61.     Because Barrow is subject to a non-compete agreement with H&R Block, she is unable to use her experience and training to earn income to provide for her family.

62.     Barrow has been unable to find employment with anyone else since HPI terminated her.

63.     On information and belief, Niwranski has also made false statements about Barrow to the Douglas Sheriff's Office as the Sheriff's Office has informed Barrow she is the subject of an ongoing criminal investigation.

64.     Niwranski's false statements to H&R Block and the Sheriff's Office were made with malicious intent.

///

///

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

**HPI Fails to Pay Barrow Her Final Wages on Time**

65.    After firing Barrow on or about March 26, 2020, HPI did not give Barrow her final paycheck until March 31, 2020, and the amount they paid her ($177.32) was only for one day.

66.    Barrow was forced to file a complaint with the Nevada Labor Commissioner to obtain the remaining amount owed to her for wages.

67.    Through the Labor Commissioner, Barrow received additional wages in the amount of $1,010.88 on or about April 23, 2020, but the check did not include pay for overtime owed.

68.    Thus, HPI did not pay Barrow her final regular wages due until about 28 days after firing her, and it still has not paid her for overtime pay owed.

## FIRST CAUSE OF ACTION

**Failure to Pay Overtime in Violation of FLSA, 29 U.S.C. § 201 *et seq.***

**(Against HPI)**

69.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

70.    Under 29 U.S.C. § 207(a)(1): "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

71.     HPI employed Barrow to engage in commerce or in the production of goods for commerce.

72.     At HPI's direction, Barrow regularly worked more than 40 hours during her workweeks.

73.     For many hours Barrow worked overtime, HPI failed to pay her at a rate not less than one and one-half times the regular rate of $24 per hour at which she was employed.

74.     Barrow was an hourly worker and none of the exemptions to the FLSA overtime requirements apply to her.

75.     Barrow demands that HPI pay her one and one-half times her hourly rate of pay for all hours worked in excess of forty hours per workweek during her employment.

76.     HPI acted in bad faith by choosing not to pay Barrow overtime when it knew it was required to pay Barrow overtime.

77.     As a result of HPI's conduct, Barrow is entitled to attorney's fees, costs, interest, liquidated damages, and any other damages allowed pursuant to 29 U.S.C. § 216(b) and any other sections of the FLSA.

**SECOND CAUSE OF ACTION**

**Failure to Pay Overtime in Violation of NRS 608.018 (Against HPI)**

78.     Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

79.     Under NRS 608.018(2), Nevada employers must "pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5000

not less than 1 1/2 times the minimum rate set forth in NRS 608.250 works more than 40 hours in any scheduled week of work."

80.     NRS 608.140 gives employees a private right of action for unpaid wages.

81.     Barrow's regular wage rate was $24 per hour, which is more than 1 1/2 times the minimum rate set forth in NRS 608.250.

82.     At HPI's direction, Barrow regularly worked more than 40 hours during her scheduled work weeks.

83.     HPI failed to pay her 1 1/2 times her regular wage for many hours she worked more than 40 during her scheduled work weeks.

84.     None of the exemptions in NRS 608.018 applies to Barrow's employment.

85.     Barrow demands that HPI pay her overtime for the hours she worked more than 40 during her scheduled work weeks.

86.     As a result of HPI's conduct, Barrow has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees, costs, and interest pursuant to NRS 608.140 and/or NRS 18.010 and NRS 18.020(3) and other applicable law.

87.     HPI's conduct was malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Barrow; as a result, Barrow is entitled to punitive damages pursuant to NRS 42.005.

///

///

///

///

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5000

### THIRD CAUSE OF ACTION

**Unpaid Wages**

**(against HPI)**

88.     Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

89.     HPI was an employer as defined by NRS 608.011 because it had control or custody of Barrow in her employment; as a result, Barrow was subject to Nevada's wage laws at all times relevant.

90.     Barrow was an employee as defined by NRS 608.010 because she was in the service of HPI, an employer, under an express contract of hire.

91.     NRS 608.016 and NAC 608.115 require employers to pay employees wages or compensation for the time the employee works at the employer's direction.

92.     HPI agreed to pay Barrow a wage of $24 per hour.

93.     Barrow performed many hours of work at HPI's direction for which HPI did not pay Barrow. For example, Barrow was not paid for work involving human resources, accounting, Niwranski's personal affairs, and correspondence through emails and text messages.

94.     HPI's conduct was malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Barrow; as a result, Barrow is entitled to punitive damages pursuant to NRS 42.005.

95.     As a result of HPI's conduct, Barrow has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees and costs, pursuant to NRS 608.140 and/or NRS 18.010 and NRS 18.020(3).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

## FOURTH CAUSE OF ACTION

### Tortious Discharge in Violation of Public Policy

### (against HPI)

96.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

97.    It is the clear and explicit policy of the State of Nevada that employers should abide by all applicable laws and regulations and that employees should be free to report an employer's alleged illegal activity to government authorities without retaliation by the employer. *See Ainsworth v. Newmont Min. Corp.*, 128 Nev. 878, (2012).

98.    It is also the clear and explicit policy of the State that employees should be free to refuse to engage in conduct they, in good faith, reasonably believe to be illegal, without retaliation. *See Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 1323-24 (1998).

99.    It is also the clear and explicit policy of the State that employees should be free to refuse to work in unreasonably dangerous work conditions, without retaliation. *See id.*

100.    Many other state laws in NRS 608 and NRS 613 place requirements and restrictions on employers to ensure they treat employees in the state with fairness and respect.

101.    HPI terminated Barrow because she reported HPI's alleged illegal activity to government authorities.

102.    Barrow took affirmative steps to address what she believed to be illegal practices by reporting to the Douglas County Sheriff's Office HPI's refusal to follow government orders and regulations related to COVID-19.

103.    Barrow reasonably believed that HPI was a non-essential business and should have been closed, based on state and local government orders and regulations.

104.    Barrow also reasonably believed that based on the orders and regulations she and other employees, especially those who are sick, should have been working from home during the pandemic, which was possible for them to do.

105.    Barrow made HPI owner Harry Niwranski aware of the orders and regulations and possible repercussions, but he refused to close HPI or to allow Barrow and other employees to work from home. Instead, Niwranski required Barrow to come to HPI's offices for work and his dog's birthday party.

106.    Because Barrow was concerned about her health and safety and the health and safety of HPI's other employees, she contacted the Sheriff's Office to report HPI's failure to comply with the government directives.

107.    The Sheriff's Office spoke with Niwranski who afterward made disparaging comments about the Sheriff's Office.

108.    The day after Barrow reported HPI to the Sheriff's Office, Niwranski and Magnotta fired Barrow, saying they were doing it because she contacted the Sheriff's Office.

109.    After Barrow's termination, HPI sent Barrow a letter asking her to stop making reports to the Sheriff's Office regarding the governor's orders and damage to stored vessels.

110.    If Barrow had not reported HPI's alleged illegal conduct to the Sheriff's Office, then HPI would not have terminated her.

111.    Alternatively, HPI terminated Barrow because she refused to engage in illegal activity.

112.   Magnotta and Niwranski asked Barrow to help set up an illegal tax scheme related to Niwranski's son's schooling, but Barrow refused to assist with the scheme and told them she would not let them do anything illegal.

113.   If Barrow had not refused to participate in HPI's illegal tax scheme, then HPI would not have terminated her.

114.   Alternatively, HPI terminated Barrow because she refused to work in unreasonably dangerous work conditions.

115.   Barrow asked Niwranski if she could work from home due to the COVID-19 pandemic to protect her health and safety.

116.   Barrow also asked Niwranski to allow Kyra Whybrew to stay at home because she was sick with symptoms that could have been related to the virus.

117.   When Niwranski would not allow Barrow to work from home and ordered her and Whybrew to come into work, Barrow refused to come into work for her health and safety and the health and safety of others.

118.   Barrow had worked from home before and explained to Niwranski that she was able to work from home.

119.   It would have been unreasonably dangerous for Barrow to work at HPI's office given the quickly spreading pandemic and Whybrew's symptoms.

120.   If Barrow had not refused to come into work, then HPI would not have terminated her.

121.   Because HPI fired Barrow, she has suffered lost wages and benefits, emotional distress, humiliation, lost job opportunities, and other damages.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

122.    As a result of HPI's conduct, Barrow has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees and costs.

123.    HPI's conduct was malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Barrow; as a result, Barrow is entitled to punitive damages pursuant to NRS 42.005.

**FIFTH CAUSE OF ACTION**

**Penalty for Violation of NRS 608.020**

**(against HPI)**

124.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

125.    NRS 608.020 requires employers to pay an employee it discharges any wages and compensation earned and unpaid immediately.

126.    Under NRS 608.040, an employer who fails to pay an employee wages or compensation by the date they are due must pay a penalty to the employee equal to the same rate of pay from the day the employee was discharged, either until the employee is paid or for a period of 30 days.

127.    Under NRS 608.050(2), every employee has a lien to enforce this penalty.

128.    HPI fired Barrow on or about March 26, 2020.

129.    HPI did not give Barrow her alleged final paycheck until March 31, 2020, and the amount they paid her ($177.32) was only for one day.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

130.    Barrow was forced to file a complaint with the Labor Commissioner to obtain the remaining amount owed to her for wages.

131.    Through the Labor Commissioner, Barrow received additional wages in the amount of $1,010.88 on or about April 23, 2020, but the check did not include pay for overtime owed.

132.    Thus, HPI did not pay Barrow her final regular wages due until about 28 days after firing her, and it still has not paid her for overtime pay owed.

133.    HPI must pay Barrow a penalty equal to 30 days of wages as a penalty.

134.    As a result of HPI's conduct, Barrow has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees, costs, and interest pursuant to NRS 608.140 and/or NRS 18.010 and NRS 18.020(3) and other applicable law.

135.    HPI's conduct was malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Barrow; as a result, Barrow is entitled to punitive damages pursuant to NRS 42.005.

## SIXTH CAUSE OF ACTION

### Defamation

### (against HPI & Harry Niwranski)

136.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

137.    Harry Niwranski, as an individual and on behalf of HPI, made false and defamatory statements about Barrow to a third party by telling H&R Block that Barrow had filed

an extension for HPI's taxes without permission and used a company credit card to pay for filing the extension without permission. He also said Barrow helped his son file a tax return without permission.

138.    Niwranski's statements to H&R Block were false because Barrow did have permission to file for the extension, use the credit card, and help his son file his tax return.

139.    Niwranski's false statements were unprivileged.

140.    Niwranski made these statements intentionally, recklessly, or negligently, with the express purpose of harming Barrow's employment relationship with H&R Block.

141.    Because of Niwranski's false statement, H&R Block terminated Barrow's employment so she is no longer able to earn income by working for H&R Block.

142.    Because Barrow is subject to a non-compete agreement with H&R Block, she is unable to use her experience and training to earn income to provide for her family.

143.    Barrow has also suffered emotional distress, humiliation, and injury to her reputation and standing.

144.    Damages are also be presumed because Niwranski's actions tended to injure Barrow in her business profession.

145.    Niwranski's conduct has been malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Barrow; thus, Barrow is entitled to an award of punitive damages.

146.    As a result of Niwranski's conduct, Barrow has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees and costs.

///

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5000

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (against HPI and Niwranksi)

147.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

148.    Niwranksi, as an individual and on behalf of HPI, intentionally, or with reckless disregard, terminated Barrow and made false accusations of misconduct about her to H&R Block in order to inflict severe emotional distress on Barrow.

149.    Niwranksi has also intentionally, or with reckless disregard, made false statements to the Sheriff's Office about Barrow in order to inflict severe emotional distress on her.

150.    Niwranksi has also intentionally, or with reckless disregard, engaged in other conduct intended to harass and frighten Barrow in order to inflict severe emotional distress on her.

151.    Niwranski's conduct was extreme and outrageous, outside the bounds of decency, and would be regarded as utterly intolerable in a civilized community.

152.    As a direct result of Niwranski's conduct, Barrow has suffered severe emotional distress, fear, anguish, humiliation, and the loss of enjoyment of life.

153.    Defendant's conduct was malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Plaintiff; thus, Plaintiff is entitled to an award of punitive damages.

154.    As a result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

### Interference with Contractual Relations

### (against HPI and Niwranksi)

155.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

156.    Barrow and H&R Block had a valid and existing contract under which Barrow was preparing tax returns in exchange for wages or salary.

157.    Niwranski, as an individual and on behalf of HPI, had knowledge of the contract.

158.    Niwranski intentionally made false statements to H&R Block in order to disrupt the contractual relationship between Barrow and H&R Block.

159.    Because of Niwranski's actions, the contract was actually disrupted when H&R Block terminated its relationship with Barrow.

160.    Because of Niwranski's actions, Barrow has suffered lost wages and benefits, prospective job opportunities, emotional distress, humiliation, and other damages.

161.    Niwranski's conduct has been malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Barrow; thus, Barrow is entitled to an award of punitive damages.

162.    As a result of Niwranski's, Barrow has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees and costs.

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

## NINTH CAUSE OF ACTION

### Civil Conspiracy

### (against HPI and Magnotta)

163.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

164.    Niwranski and Magnotta, acting in concert, intended to accomplish an unlawful objective by terminating Barrow in violation of public policy.

165.    Niwranski and Magnotta openly discussed with each other in Barrow's presence their intent to terminate Barrow because she contacted the Sheriff's Office.

166.    Both Niwranski and Magnotta told Barrow she was terminated because she contacted the Sheriff's Office.

167.    Niwranski and Magnotta pursued this unlawful objective for the purpose of harming Barrow by terminating her employment.

168.    Because of Defendants' actions, she has suffered lost wages and benefits, prospective job opportunities, emotional distress, humiliation, and other damages.

169.    As a result of Defendants' conduct, Barrow has been required to retain the services of an attorney and, thus, is entitled to reasonable attorney's fees and costs.

170.    Defendants' conduct was malicious, fraudulent, or oppressive and was designed to vex, annoy, harass, or humiliate Barrow; as a result, Barrow is entitled to punitive damages pursuant to NRS 42.005.

///

///

**PICCOLO LAW OFFICES**
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
(702) 630-5030

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     A trial by jury on all appropriate issues;

2.     Declare the acts and practices of Defendants to be violations of federal law, Nevada statutes, and Nevada common law;

3.     Award Plaintiff all general damages allowed by federal statutes, Nevada statutes, and state common law;

4.     Award Plaintiff all compensatory damages allowed by federal statutes, Nevada statutes, and state common law;

5.     Award Plaintiff liquidated damages in an amount equal to the amount of lost and/or unpaid wages found due;

6.     Award Plaintiff penalties allowed by Nevada statutes;

7.     Award Plaintiff punitive damages in an amount to be determined at trial;

8.     Award Plaintiff her reasonable attorney's fees and costs as authorized by applicable federal and state laws and rules;

9.     For pre-judgment and post-judgment interest to the fullest extent allowed by law or in equity; and

10.    For such other and further relief as the court deems just, equitable, or proper.

Dated: September 18, 2020

   /s / Matthew C. Piccolo
MATTHEW C. PICCOLO, ESQ.
Nevada Bar No. 14331
PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
Tel: (702) 630-5030

*Attorney for Plaintiff Erica Barrow*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Erica Barrow demands that a trial in the above-entitled action be heard by a jury, including all triable issues, pursuant to FRCP 38.

Dated: September 18, 2020

/s / Matthew C. Piccolo
MATTHEW C. PICCOLO, ESQ.
Nevada Bar No. 14331
PICCOLO LAW OFFICES
8565 S Eastern Ave Ste 150
Las Vegas, NV 89123
Tel: (702) 630-5030

*Attorney for Plaintiff Erica Barrow*
